# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRIAN HARRIS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **SAINT JOSEPH'S UNIVERSITY, et al.** | : | **NO. 13-3937** |

## MEMORANDUM

RESTREPO, J.                                                                 MAY 12, 2013

This case arises from an internal administrative disciplinary investigation and student conduct hearing at Saint Joseph's University ("SJU") resulting in plaintiff, Brian Harris, being found responsible for sexually assaulting defendant Jane Doe, both of whom were SJU students at the time. Plaintiff brought this action against defendants: SJU; Joseph Kalin, a Public Safety Officer at SJU; and Jane Doe. Against SJU only, plaintiff alleges: breach of contract (Count I); violation of Title IX of the Education Act Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681, et seq. (Count II); negligence (Count III); and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. C.S.A. § 201-1, et seq. (Count IV). Against all defendants, plaintiff alleges: defamation (Count V); making public statements about plaintiff placing him in a false light (Count VI); and intentional infliction of emotional distress ("IIED") (Count VII). Finally, against Jane Doe only, plaintiff alleges intentional interference with contractual relations (Count VIII).[1]

Pending before the Court are the Motions to Dismiss Plaintiff's Amended Complaint

---

[1] Although Count VIII of the Amended Complaint was mistakenly identified as Count IX, by stipulation of the parties approved by the Court (ECF Document 22), the Amended Complaint was corrected in that regard.

filed by defendants, SJU and Joseph Kalin (collectively, "University Defendants") (ECF Doc. 23) and defendant Jane Doe (Doc. 24), under Federal Rule of Civil Procedure 12(b)(6). For the reasons which follow, defendants' motions to dismiss are granted in part and denied in part.

### 1. LEGAL STANDARD UNDER FED. R. CIV. P. 12(b)(6)

Dismissal under Rule 12(b)(6) is proper where the Amended Complaint fails to state a claim upon which relief may be granted, such as where the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations are insufficient to survive a motion to dismiss. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

The Court must consider only those facts alleged in the complaint and accept all of those allegations as true. *Wiest v. Lynch*, 2014 WL 1490250, *8 (E.D. Pa. 2014) (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d "Cir. 1994)). However, the Court "need not accept as true unsupported conclusions and unwarranted inferences," *see id.* (citing *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted)), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *see Iqbal*, 556 U.S. at 678.

## 2. DISCUSSION

### (A) Count I - Breach of Contract

Plaintiff's Amended Complaint alleges:

> At all times material hereto, a contractual relationship purportedly existed between SJU and [plaintiff]. The [Student] Handbook,[2] the terms of which were unilaterally drafted by SJU, was deemed part of that contract. Pursuant thereto, SJU was required to act in accordance with the Handbook in resolving complaints of misconduct and violations of SJU's policies and regulations, in the investigation of those complaints, in the process of adjudicating complaints of sexual misconduct, and in resolving appeals brought challenging disciplinary decisions.

Pl.'s Am. Compl. (Document 20), ¶ 81 (footnote added). The Amended Complaint further alleges: "SJU **breached** its contract with Harris by failing to comply with **the Handbook, a contract between Harris and SJU**, including, without limitation, SJU's implicit duties of good faith and fair dealing in connection therewith, by: . . . " *Id.* ¶ 83 (emph. added). Paragraph 83 of the Amended Complaint then includes 23 general averments regarding policies and procedures for investigation and adjudication of complaints of alleged sexual misconduct wherein plaintiff alleges SJU breached its contract with plaintiff. *Id.* ¶ 83(a)-(w). Finally, the Amended Complaint alleges damages as a result of SJU's alleged breach of contract including:

> having [plaintiff's] SJU school record improperly include a conviction and/or other finding of guilt of sexual misconduct (assault) based upon the unfounded charges brought against him, marring [his] ability to enroll in another college or university of similar or greater stature as SJU, stigmatizing [plaintiff] with a finding of guilt for an act he did not commit, and monetary losses.

---

[2]A copy of the 2012/2013 SJU Student Handbook ("Handbook") is attached as Exhibit A to the Declaration of Joshua W.B. Richards, counsel for University Defendants, accompanying the University Defendants' brief in support of their motion to dismiss.

*Id.* ¶ 84.  Thus, although the Amended Complaint states that "a contractual relationship purportedly existed between SJU and Harris" and that the "Handbook . . . was deemed part of that contract," *id.* ¶ 81, the specific allegations of breach of contract assert that "SJU breached its contract with [plaintiff] **by failing to comply with the Handbook**."  *Id.* ¶ 83 (emph. added).  The breach alleged was "failing to comply with the Handbook."  *Id.*

The parties acknowledge that to state a claim for breach of contract, a plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages, *see Dempsey v. Bucknell Univ.*, 2012 WL 1569826, *17 (M.D. Pa. 2012) (citing *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006)).  *See* Univ. Defs.' Br. 8; Pl.'s Br. 10.  Initially, it is noted that University Defendants "concede[] that 'the relationship between a private educational institution and an enrolled student is contractual in nature,' *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. 1999), and here the terms of that contract are outlined in the Handbook."[3]  *See* Univ. Defs.' Br. 8 (footnote omitted).  Thus, it appears that for purposes of the motions to dismiss, the parties agree that if plaintiff has sufficiently and properly pled **a violation by SJU of the rules and regulations set forth in the Handbook**, plaintiff's claim of breach of contract survives the motion to dismiss with regard to the breach of contract claim.

Indeed, under Pennsylvania law, "[t]he relationship between a private educational institution and an enrolled student is contractual in nature; therefore, a student can bring a cause

---

[3]As reflected by the caselaw cited by the parties in support of their respective positions, the parties appear to agree that Pennsylvania substantive law governs plaintiff's state law claims. *See, e.g.,* Univ. Defs.' Br. 8 n.3 (citing cases) ("Pennsylvania substantive law governs Harris' breach of contract claim.').

of action against said institution for breach of contract where the institution ignores or violates portions of the written contract." *Dempsey*, 2012 WL 1569826, at *17 (quoting *Swartley*, 734 A.2d at 919). "The contract between a private institution and a student is comprised of written guidelines, policies, and procedures as contained in the written materials distributed to the student over the course of their enrollment in the institution." *Kimberg v. Univ. of Scranton*, 2007 WL 405971, *3 (M.D. Pa. 2007) (quoting *Swartley*, 734 A.2d at 919). Thus, it appears that plaintiff has sufficiently pled the **existence** of a contract between plaintiff and SJU, and the remaining issue is whether plaintiff's allegations are sufficient to support a finding that SJU breached the terms of the contract as contained in the Handbook.[4] *See, e.g., id.*; *Reardon v. Allegheny College*, 926 A.2d 477, 480 (Pa. Super. 2007) ("The relationship between a privately funded college and a student has traditionally been defined in this Commonwealth as strictly contractual in nature. . . . As such, we review the agreement between the parties concerning disciplinary procedures, contained within a portion of the student handbook . . . as we would any other agreement between two private parties.") (citations omitted).

---

[4]In an attempt to show that there are "questions of unresolved fact" on which a denial of the University Defendants' motion may be based, *see* Pl.'s Resp. to Univ. Defs.' Mot. 8, plaintiff points to what he perceives to be a contradiction between SJU's concession that the Handbook **is** a contract and the Handbook's language that it "is not a contract," *id.* at 8, 11 (quoting Handbook at 3). However, this issue appears to be a red herring with regard to resolution of the motion to dismiss. As mentioned, **plaintiff** specifically **pleads** in his Amended Complaint: "SJU **breached** its contract with Harris **by failing to comply with the Handbook, a contract between Harris and SJU** . . ." *See* Pl.'s Am. Compl. ¶ 83 (emph. added). Thus, the allegations in the Amended Complaint **upon which plaintiff basis his breach of contract claim** assert that SJU breached its contract "by failing to comply with the Handbook." *Id.* To the extent that plaintiff is now arguing that, based on the Handbook's language, the Handbook may not be a contract, it would appear that plaintiff's breach of contract claims - which are based on the averment that the Handbook **is** a contract and that SJU breached that contract - must be dismissed for failure to state a claim.

In evaluating whether allegations in a Complaint survive a Rule 12(b)(6) motion, the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *see Iqbal*, 556 U.S. at 678, and conclusory allegations are insufficient to survive a motion to dismiss, *see Fowler,* 578 F.3d at 210. Here, plaintiff's breach of contract claim in the Amended Complaint relies on conclusory and insufficient allegations. *See, e.g.*, Pl.'s Am. Compl. ¶ 83(a)-(w). For example, plaintiff alleges that SJU "breached its contract with Harris by failing to comply with the Handbook" in "[f]ailing to provide **adequate** policies and procedures for the investigation and adjudication of complaints," "[f]ailing to provide **adequate** notice of the polices and procedures," and "failing to provide **fair** notice of the parameters of the charged offense." *Id.* ¶ 83(a), (b), and (e) (emph. added). Conclusory allegations such as these, with no clear averments as to what statement or regulations included in the Handbook (which the parties appear to agree for present purposes was a contract) were violated or breached, are insufficient to survive a motion to dismiss. *See, e.g., Bradshaw v. Pa. State Univ.*, 2011 WL 1288681, *2 (E.D. Pa. 2011) (giving plaintiff former student opportunity to amend her complaint to "allege specifically the terms of the contract in dispute").

To survive a motion to dismiss, *Iqbal* explains, "a complaint must contain sufficient factual matter," that if accepted as true, states a claim for relief "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. In this case, plaintiff has failed to plead sufficient factual content to support his claim that SJU breached the contract. *See* Am. Compl. ¶ 83(a)-(w). For example, it is not at all clear which policy(ies) or procedure(s) in the

Handbook plaintiff is alleging SJU breached.

"[I]f a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Wiest*, 2014 WL 1490250, at *8 (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008)). Therefore, here, the Amended Complaint is dismissed without prejudice to plaintiff's right to amend the Complaint to include sufficient factual allegations to support his claim of breach of contract.[5]

If plaintiff chooses to amend the Complaint, he should be mindful that "[w]hen a contract so specifies, generally applicable principles of contract law will suffice to insulate the institution's internal, private decisions from judicial review." *See Reardon*, 926 A.2d at 480-81. The Handbook clarifies that, among other things:

> Community Standards proceedings are not criminal or civil proceedings, but rather, internal administrative determinations of violations of institutional policy. Civil or criminal rules of procedure and evidence do not apply. . . . After receiving information at the hearing, the Hearing Officer, Peer Review Board, or Community Standards Board shall determine . . . whether the respondent(s) is responsible for violating the Community Standards. . . . **Subsequent reviewers shall not determine anew whether there was a Community Standards violation.**

Handbook 35-36 (emph. added). The Handbook further provides: "The decision made on appeal [by the Vice President for Student Life/Associate Provost ('VPSL')] **will be final**. If the VPSL and Provost/designee find no merit to the appeal, the decision of the original hearing shall stand."

---

[5]Plaintiff would be well-advised to include in any amended pleading factual allegations identifying the specific provisions of the 120-page Handbook that SJU allegedly breached. *See, e.g., Bradshaw*, 2011 WL 1288681, at *2 (dismissing without prejudice breach of contract claim where plaintiff former student failed to sufficiently "identify in the complaint the provisions of the handbook that the defendant [University] allegedly breached," the Court gave plaintiff an opportunity to amend the Complaint "to allege specifically the terms of the contract in dispute, the defendant's breach thereof, and the harm that resulted").

*Id.* at 39-40 (emph. added). Plaintiff's Amended Complaint does not appear to allege that this provision is ambiguous. Under Pennsylvania law, to the extent that the unambiguous terms of the Handbook were not breached, "[t]his clause is adequate to insulate the merits of [SJU's] decision from intensive review." *See Reardon*, 926 A.2d at 482 (citing *Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001)) (finding that plaintiff's request that the Court review the "private, internal decisions" of the defendant College was something that was "forbidden by the terms of both [the handbook] and case law, where a clause in the student handbook stated 'The decision of the President is final.'").[6]

### (B) Count II - Violation of Title IX

Plaintiff's Amended Complaint alleges that SJU used "impermissible gender bias against

---

[6]"A distinction must be made between the allegation that [SJU] breached the terms of [the Handbook] by failing to adhere to its provisions, which is a reviewable claim, and the allegation that the way in which these provisions were implemented, or the outcome arrived at by such implementation, was unfair - a claim which is **not** reviewable according to the provisions of [the Handbook]." *See Reardon*, 926 A.2d at 482 n.5 (citing *Murphy*, 777 A.2d at 429). That having been said, although SJU's "internal, private decisions," *see Reardon*, 926 A.2d at 480-81, on whether there was a "Community Standards violation," *see* Handbook 35-36, may be insulated from judicial review, *see Reardon*, 926 A.2d at 480-81, by the Handbook's own terms "Community Standards proceedings are not criminal or civil proceedings, but rather, **internal administrative determinations of violations of institutional policy**," *see* Handbook 35-36 (emph. added). Defendant Doe argues that since SJU's administrative determination that plaintiff's conduct violated Community Standards and institutional policy was "final" under the terms of the Handbook, "Jane Doe **cannot** be found by this court to have made any statements regarding the sexual assault that are false, defamatory, or place Harris in a false light," or to have intentionally inflicted any emotional distress or intentionally interfered with the contract between SJU and Harris. *See* Doe's Br. 13 (emph. in orig.). However, defendant fails to cite specific authority or caselaw to support the proposition that because the contract (the Handbook) indicates that SJU's determination was final for purposes of making an internal administrative determination that Community Standards were violated, the Court is bound by SJU's findings of fact for purposes of plaintiff's civil action claims, such as defamation and intentional interference with contractual relations.

Harris in the investigation and adjudication of Doe's accusations," *see* Pl.'s Am. Compl. ¶ 92, and "violated Title IX in the manner in which it improperly adjudicated the baseless charge of sexual misconduct by Doe against Harris," *id.* ¶ 93. Thus, plaintiff alleges that plaintiff "has been discriminated against by SJU on the basis of his gender in violation of Title IX." *Id.* ¶ 95.

Title IX provides in pertinent part: "No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Tafuto v. N.J. Inst. of Tech.*, 2011 WL 3163240, *2 (D. N.J. 2011) (quoting 20 U.S.C. § 1681(a)). "A plaintiff alleging racial or gender discrimination by a university [under Title IX] must do more than recite conclusory assertions." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d cir. 1994); *see Tafuto*, 2011 WL 3163240, at *2 (quoting *Yusuf*) ("[W]holly conclusory allegations . . . [do not] suffice for purposes of Rule 12(b)(6).").

In *Yusuf*, two categories of claims of gender bias in university discipline were recognized: claims of an erroneous outcome from a flawed proceeding and claims of selective enforcement. *Scott v. Worldstarhiphop, Inc.*, 2011 WL 5082410, *4 (S.D. N.Y. 2011) (citing *Yusuf*, 35 F.3d at 714-16). However, "in neither case do wholly conclusory allegations suffice for the purposes of Rule 12(b)(6)." *Id.* (quoting *Yusuf*). When a plaintiff claims a flawed outcome, he must allege, among other things, "particular circumstances suggesting that **gender** bias was a motivating factor behind the erroneous finding." *Id.* (quoting *Yusuf*) (emph. added). Similarly, when a plaintiff claims selective enforcement, a plaintiff must allege, among other things, "particular circumstances suggesting that **gender** bias was a motivating factor behind the inconsistency." *Id.* (citing *Yusuf*) (emph. added). Here, plaintiff fails to allege facts sufficient to meet either

standard.  *See, e.g., Scott*, 2011 WL 5082410, at *5 ("there is no **nonconclusory** allegation of gender bias") (emph. added); *Tafuto*, 2011 WL 3163240, at *3.  The averments in the Amended Complaint which purport to identify "[e]vidence of SJU's impermissible gender bias against Harris," *see* Am. Comp. ¶ 92(a)-(f), do not suggest gender bias as a motivating factor.  Dismissal of the Amended Complaint is proper where plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face."  *See Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.  Conclusory allegations are insufficient to survive a motion to dismiss.  *See Fowler*, 578 F.3d at 210.

### (C)  Count III - Negligence

Plaintiff's Amended Complaint alleges generally that SJU "had a duty to hire competent personnel, adequately train its personnel, adequately supervise its personnel, and terminate and/or sanction personnel for substandard performance," *see* Am. Compl. ¶ 100, and that "SJU owed a separate duty of care to Harris to ensure that its staff and personnel were properly trained and supervised," *id.* ¶ 101.  The Amended Complaint further alleges that SJU was negligent and breached its duty to Harris in failing to: "hire well-trained agents and employees, including, without limitation, investigators and community standards board panel members, including, without limitation, the proper selection of student panelist with requisite knowledge and majority"; "train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, complaints of sexual misconduct"; "properly train its employees, agents or representatives regarding the requirements of Title IX"; "properly train its employees, agents or representatives in the discovery and preservation of relevant evidence";

"properly train its employees, agents or representatives in basic due process as it pertains to the investigation, adjudication, and appeal from adjudication of complaints of sexual misconduct"; "supervise its employees, agents or representatives to ensure complaints of sexual misconduct are adequately investigated and fairly adjudicated." *Id.* ¶ 102(a)-(f). Plaintiff further alleges that SJU was negligent and breached its duty to Harris in "[c]ontinuing to employ substandard employees, including investigators and community standards panel members." *Id.* ¶ 102(g).

SJU argues that there is no articulated basis for these alleged duties other than plaintiff's self-serving conclusory averments that SJU had a duty "because it did." *See* Univ. Defs.' Br. 20. SJU further argues that even assuming the Amended Complaint identifies a plausible duty, plaintiff's negligence claims are barred by Pennsylvania's gist of the action doctrine. *See* Univ. Defs.' Br. 21.

In Pennsylvania, the gist of the action doctrine maintains the distinction between breach of contract claims and tort claims by precluding recovery in tort in the following situations:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Dempsey*, 2012 WL 1569826, at *21 (citing *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp.2d 546, 553 (M.D. Pa. 2010)); *see Sarsfield*, 707 F. Supp.2d at 553 (citing *eToll v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002)). In *Reardon v. Allegheny College*, 926 A.2d 477 (Pa. Super. 2007), a former student sued a college asserting, among other things, breach of contract and negligence claims against the private college and a professor arising from the college's

determination that the student was guilty of plagiarizing her classmate's work. With regard to the plaintiff's negligence claim against the college and the professor, Pennsylvania's Superior Court found that "[t]he only duties owed by [the private college] and [the professor] we can discern are rooted in [the student handbook] - not some external and undefined general duty of care. . . . Indeed, [the handbook] represents the sole basis for the relationship between the parties - [plaintiff] promises to adhere to the Honor Code in exchange for an education at [the college], while [the college, and to a lesser degree [the professor], promises to adhere to the terms of [the handbook] in giving this education in exchange for monetary compensation." *Id.* at 487 (citations omitted). Accordingly, the Superior Court found that the trial court "correctly applied the gist of the action doctrine in dismissing [the plaintiff's] negligence claim as legally defective." *Id.*

Similarly, here, in that it appears that plaintiff's negligence claims arise from the contractual relationship between plaintiff and SJU, these negligence claims are barred by the gist of the action doctrine.[7] *See id.* Indeed, plaintiff's allegations regarding damages suffered as a result of the alleged negligence, *see* Am. Compl. ¶ 104, are identical to the alleged damages suffered as a result of the alleged breach of contract, *id.* ¶ 84. Furthermore, as University Defendants point out, plaintiff fails to point to any caselaw indicating that a private university owes these specific duties to its students under Pennsylvania negligence law. *See, e.g., Tran v.*

---

[7]It is noted that Count VI of the Amended Complaint, alleging a violation of the UTPCPL, specifically alleges that SJU "[r]epresent[ed], warrant[ed] and guarantee[ed] **in writing** that SJU trained its employees and agents in the proper and unbiased investigation and adjudication of complaints of sexual misconduct, when in fact it had not." *See* Am. Compl. ¶ 107(a) (emph. added). Arguably, this averment lends support to the contention that plaintiff's negligence claims sound in terms of breach of contract rather than tort.

*State Sys. of Higher Educ.*, 986 A.2d 179, 182 (Pa. Commw. 2009) (citing *Reardon*, 926 A.2d at 480) ("Pennsylvania courts have held consistently that the relationship between a student and a privately funded college is '**strictly contractual** in nature.'") (emph. added). Moreover, other than making **conclusory** allegations and implications from its breach of contract claims, the Amended Complaint does not allege any facts "to support an inference that Defendant [SJU] breached a duty in the [actual] areas of hiring, training, or supervising its employees." *See, e.g., Dempsey*, 2012 WL 1569826, at *22; *see Iqbal*, 556 U.S. at 678. Accordingly, University Defendants' motion to dismiss is granted with respect to plaintiff's claim of a Title IX violation and that claim is dismissed.

### (D) Count IV - Violation of Pennsylvania's UTPCPL

The UTPCPL creates a private right of action for "[a]ny [person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property" as a result of the seller's deceptive or unlawful actions. *Wise v. Am. Gen. Life Ins. Co.*, 2005 WL 670697, *7 (E.D. Pa. 2005) (quoting 73 Pa. C.S. § 201-9.2(a)). Plaintiff's Amended Complaint alleges that "SJU committed various unfair and deceptive acts and practices in violation of the [UTPCPL], including, but not limited to":

> a. Representing, warranting and guaranteeing in writing that SJU trained its employees and agents in the proper and unbiased investigation and adjudication of complaints of sexual misconduct, when in fact it had not;
>
> b. Representing that Harris would receive a fair and impartial hearing in connection with any allegation of sexual misconduct, when he would not;

c. Representing that Harris would receive adequate notice of and due process in connection with allegations of sexual misconduct, when he would not; and,

d. Misrepresenting SJU's compliance with Title IX[.]

Pl.'s Am. Compl. ¶ 107.

Initially, SJU contends that "to have standing to state a claim under the UTPCPL, a party must be, as a threshold matter, someone who 'purchases or leases' goods or services for 'personal, family, or household purposes,'" *see* Univ. Defs.' Br. 23 (quoting 73 Pa. Pa. C.S. § 201-9.2(a)), and that "[i]t seems likely that Harris' parents, not Harris, paid for his tuition," *id.* However, the Amended Complaint **does** allege that plaintiff "purchased, inter alia, educational services from SJU for which he remitted payment in the form of tuition and fees." *See* Am. Compl. ¶ 108. Therefore, at this stage of the proceedings, the Complaint appears sufficient in that regard.

"To state a claim under the UTPCPL, a plaintiff must show: (1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury." *Pellegrino v. State Farm Fire and Cas. Co.*, 2013 WL 3878591, *8 (E.D. Pa. 2013) (citing *Caroselli, Sr. v. Allstate Prop. & Cas. Ins. Co.*, 2010 WL 3239356, *7 (E.D. Pa. 2010)). Although SJU contends that plaintiff's averments are insufficient to make out a claim under Pennsylvania's UTPCPL, it appears that considering the facts alleged in the Complaint and accepting all of those allegations as true, *see Wiest*, 2014 WL 1490250, at *8 (citing *ALA, Inc.*, 29 F.3d at 859), plaintiff has made sufficient allegations to allege a claim for a violation of the UTPCPL at this stage of the proceedings.

**(E)   Count V - Defamation (against SJU, Doe, and Kalin)**

Plaintiff's Amended Complaint alleges that each of the defendants made communications about plaintiff which were defamatory in nature in that "each referred to Harris as the perpetrator of a sexual assault on Doe, even though they knew the allegations were false, or with reckless indifference to the truth or falsity of said allegations." *See* Am. Compl. ¶¶ 113-114. To state a claim for defamation under Pennsylvania law, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of the defamatory meaning; (5) the understanding by the recipient that the statement refers to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a constitutionally privileged occasion. *Dempsey*, 2012 WL 1569826, at *13 (citing 42 Pa. C.S. § 8343). "A publication is defamatory if it tends to blacken a person's reputation or expose him to public hatred, contempt or ridicule or injure him in his business or profession." *Id.* (quoting *Dunlap v. Phila. Newspapers, Inc.*, 448 A.2d 6, 10 (Pa. Super. 1982)) (citation and internal quotation marks omitted). "In order to be actionable, the words must be untrue, unjustifiable, and injurious to the reputation of another." *Id.* (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. 2008)).

University Defendants argue that plaintiff's defamation claims fail because plaintiff alleges that individuals within the University shared information about allegations of sexual misconduct with one another. "In general, publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 463 (Pa. Super. 1984). Viewing plaintiff's Amended Complaint under the appropriate motion to dismiss standard, plaintiff appears to have sufficiently alleged, *see* Am.

Compl. ¶¶ 112-130, publication of defamatory matter "to one other than the person defamed," *see id.*

Next, University Defendants briefly argue that plaintiff does not allege "special harm" and that his defamation claims therefore fail. *See* Univ. Defs.' Br. 25. The term "special harm" is defined as "actual damages which are economic or pecuniary losses." *Klimaski v. Parexel Intern.*, 2008 WL 2405006, *3 (E.D. Pa. 2008) (citing *Sprague v. Am. Bar Ass'n*, 276 F. Supp.2d 365, 368-69 (E.D. Pa. 2003)). However, a "plaintiff may succeed in a claim for defamation absent proof of special harm where the spoken words constitute slander per se." *Id.* There are four categories of words that constitute slander per se: words that impute (1) criminal offense; (2) loathsome disease; (3) business misconduct; or (4) serious sexual misconduct. *Id.* Here, applying this standard, plaintiff's allegation that "each [defendant] referred to Harris as the perpetrator of a sexual assault on Doe, even though they knew the allegations were false, or with reckless indifference to the truth or falsity of said allegations," *see* Am. Compl. ¶¶ 113-114, would be considered slander per se.

"In Pennsylvania, a defendant who publishes a statement which can be considered slander per se is liable for the proven, *actual* harm that the publication causes." *Klimaski*, 2008 WL 2405006, at *4. Actual damages are divided into two types: general and special. *Id.* General damages typically flow from defamation, such as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Id.* (citing *Sprague*, 276 F. Supp.2d at 368). Plaintiff's Amended Complaint includes averments of these types of damages caused by defendants' defamatory communications. *See, e.g.*, Pl.'s Am. Compl. ¶¶ 128-29. Thus, in *Agriss*, Pennsylvania's Superior Court found that the trial court erred in granting nonsuit

where the Superior Court found evidence was sufficient to show that the alleged defamatory remarks could have "impaired appellant's reputation and caused him personal humiliation and mental anguish" and that testimony "tended to show that the charge held appellant up to ridicule and speculation among fellow employees that his dismissal was imminent." *Agriss*, 483 A.2d at 467. University Defendants' motion to dismiss is denied to the extent that it argues that the claim of defamation should be dismissed as failing to allege "special harm."

University Defendants further argue that truth is a defense to plaintiff's defamation claim. In particular, defendants state that "Harris' specific allegations are that the University and Kalin repeated information about 'Harris' alleged sexual misconduct' as reported by Doe," and that "[t]he fact that Harris was **alleged** to have engaged in such sexual misconduct, however, is true - such allegations were made against Harris, and he acknowledges and pleads this himself." *See* Univ. Defs.' Br. 25 (citing Am. Comp. ¶¶ 122, 67) (emph. added). However, contrary to University Defendants' contention, plaintiff's Amended Complaint alleges that "each [defendant] referred to Harris ***as the perpetrator*** **of a sexual assault on Doe**, even though they knew the allegations were false, or with reckless indifference to the truth or falsity of said allegations." *See* Am. Compl. ¶ 114 (emph. added). Therefore, based on the allegations in the Amended Complaint, which must be taken as true at this stage in the litigation, University Defendants' contention in that regard is without merit.[8]

University Defendants also point to the common interest privilege as a defense to

---

[8]It is noted University Defendants do not argue that, for purposes of plaintiff's defamation claim, the Court is bound by the findings of fact made during SJU's internal administrative determination with regard to plaintiff's violation of Community Standards and institutional policy. To the extent that defendant Doe makes that argument, it is addressed *supra* note 6.

plaintiff's defamation claim.  *See* Univ. Defs.' Br. 26.  Under Pennsylvania statutory law,

someone accused of defamation may assert the affirmative defense of "the privileged character of

the occasion on which [the allegedly defamatory comment] was published."  *Aydin Corp. v. RGB*

*Sales*, 1991 WL 152465, *10 (E.D. Pa. 1991) (citing 42 Pa. C.S. § 8343(b)(2)).  As defendants

and plaintiff appear to acknowledge, *see* Univ. Defs.' Br. 26 (citing *Aydin Corp.*); Pl.'s Br. 34

(citing *Aydin Corp.*), "[s]uch a conditional privilege attaches where the circumstances are such

that facts exist which another sharing such common interest is entitled to know" and further, "a

communication must be made on a proper occasion, with a proper motive, in a proper manner,

and based upon reasonable cause," *see Aydin Corp.*, 1991 WL 152465, at *10.  Accepting all of

the allegations in the Amended Complaint as true, defendants' motion to dismiss the defamation

claim on the basis of the common interest privilege is denied at this stage of the proceedings,

without prejudice to defendants' right to raise the defense again at a later stage of the litigation.

*See, e.g., id.* (holding at the summary judgment stage that, after reviewing evidence of record, the

communications made in the course of an investigation were not defamatory in light of

Pennsylvania's common interest privilege).

Defendants contend that statements made regarding the alleged sexual assault "are

**absolutely privileged** and cannot be the basis for a claim of defamation or false light invasion of

privacy."  *See* Def. Doe's Br. 16 (emph. in orig.); *see also* Univ. Defs.' Br. 26.  In support of this

contention, defendants state that "Pennsylvania . . . applies this absolute privilege to **quasi-**

**judicial proceedings**."  *See* Doe's Br. 17 (emph. in orig.); *see also* Univ. Defs.' Br. 26.

However, as the Third Circuit has pointed out, "under Pennsylvania law **government**

**involvement** is . . . a **necessary condition** for according quasi-judicial status to grievance

procedures." *Overall v. Univ. of Pa.*, 412 F.3d 492, 497 (3d Cir. 2005) (emph. added). Indeed, our Court of Appeals clarified that "Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings before federal, state, or local **governmental bodies**, or proceedings held **pursuant to a statute or administrative regulation**." *Id.* (emph. added). In that this case involves an entirely private grievance procedure, the privilege available in Pennsylvania for communications made during quasi-judicial proceedings does not apply. Defendants' motions to dismiss are denied with regard to plaintiff's defamation claims.

### (F) Count VI - False Light (against SJU, Doe, and Kalin)

Plaintiff's Amended Complaint avers that "SJU, Doe and Kalin each made public statements about Harris which placed him in a false light." *See* Am. Compl. ¶ 132. University Defendants argue that plaintiff's false light claim is insufficient because the Amended Complaint fails to sufficiently allege the publicity element of such a claim. *See* Univ. Defs.' Br. 26-27. In particular, University Defendants state:

> Although the Amended Complaint alleges in conclusory fashion that the University and Kalin "made public statements about Harris," [*see*] Am. Compl. ¶ 132, the Amended Complaint contains not a single factual allegation about that purported publication, where it was made, and to whom. The first "publicity" that has resulted from Doe's allegations, ironically, occurred when Harris filed this lawsuit.

*Id.* at 27.

In order to sustain a claim for false light, "the element of publicity must be satisfied by widespread dissemination of the material." *Jones v. City of Phila.*, 73 Pa. D. & C.4th 246, 256 (C.P. Phila. 2005) (citing *Weinstein v. Bullick*, 827 F. Supp. 1193, 1202 (E.D. Pa. 1993)); *see*

*Herron v. MortgageNOW Inc.*, 2013 WL 867177, *2 (E.D. Pa. 2013) (false light claims in Pennsylvania require "publicity"). A plaintiff making such a claim must sufficiently allege "that a matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting *DeBlasio v. Pignoli*, 918 A.2d 822, 824 n.3 (Pa. Commw. 2007)). Publicity for purposes of a false light claim "requires more than the 'publication' required to sustain a claim for defamation." *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp.2d 232, 245 (E.D. Pa. 2012) (citing *Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. 1984)). "Rather, it requires that 'the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting *Harris*, 483 A.2d at 1384). In this case, plaintiff fails to sufficiently allege facts, *see, e.g.*, Am. Compl. ¶¶ 131-137 (Count VI "False Light"), to support a claim that defendants publicized information about plaintiff so as to constitute publicity for a false light claim. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Conclusory allegations are insufficient to survive a motion to dismiss. *See Fowler*, 578 F.3d at 210.


### (G) Count VII - Intentional Infliction of Emotional Distress ("IIED")
###           (against SJU, Doe, and Kalin)

"The elements of [IIED] are: (1) a person who by extreme and outrageous conduct (2) intentionally or recklessly causes (3) severe emotional distress to another." *Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. 2010). In order for a plaintiff to recover on an IIED claim:

> [T]he conduct must be so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be

20

> regarded as atrocious, and utterly intolerable in any civilized society
> . . . [I]t has not been enough that the defendant has acted with intent
> which is tortious or even criminal, or that he has intended to inflict
> emotional distress, or even that his conduct has been characterized by
> "malice," or a degree of aggravation that would entitle the plaintiff to
> punitive damages for another tort.

*Reardon*, 926 A.2d at 488 (quoting *Hoy v. Angelone*, 720 A.2d 745, 753-54 (Pa. 1998) (internal

citation omitted)). "It is [the] Court's responsibility to determine if conduct alleged in the cause

of action reaches the requisite level of outrageousness to support such a claim." *Britt v. Chestnut*

*Hill College*, 632 A.2d 557, 561 (Pa. Super. 1993). In addition, "the Pennsylvania Supreme

Court has required that the plaintiff present competent medical evidence to support the [IIED]

claim," *id.* (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988 (Pa. 1987)), and

the extreme and outrageous conduct must result in some physical injury, *Hart v. O'Malley*, 647

A.2d 542, 554 (Pa. Super. 1994) (citing cases) ("it is clear that in Pennsylvania, in order to state a

claim under which relief can be granted for the tort of [IIED], the plaintiffs must allege physical

injury.").

University Defendants argue that plaintiff's allegations do not rise to the requisite level of

outrageousness to support a claim for IIED. Count VII of the Amended Complaint alleges in

relevant part that "SJU, Doe and Kalin made public statements which were not true and took

actions based upon false information to falsely portray Harris as a cruel sex offender, which was

not true and caused him severe distress." *See* Am. Compl. ¶ 139. The Amended Complaint

avers that, "[a]s a direct and proximate result of the aforementioned extreme, outrageous,

intentional, willful and malicious conduct of SJU, Doe, and Kalin, Harris suffered and will

continue to suffer, inter alia, severe emotional distress, mental anguish, embarrassment and

humiliation, all of which may be permanent in nature." *Id.* ¶ 143.

In *Reardon*, the plaintiff former student claimed that Allegheny College and a professor "intentionally and wrongly targeted and accused [her] of violations of the college's honor code," despite their knowledge of the falsity of these allegations, and that the defendants deprived plaintiff of her "rights to a fair and impartial hearing." *See Reardon*, 926 A.2d at 488. Affirming the trial court's determination that the alleged actions of the defendants were not sufficient to support an action for IIED, *see id.* at 487, Pennsylvania's Superior Court found that, even if accepted as true, plaintiff's allegations "do not rise to a level that could be described as "clearly desperate and ultra extreme conduct." *Id.* at 488 (quoting *Hoy*, 720 A.2d at 754).

In *Stokley v. Bristol Borough School Dist.*, 2013 WL 4787297 (E.D. Pa. 2013), plaintiff argued that "subjecting an African American student to harsher discipline than white students, particularly for an offense the African American student did not commit, is patently outrageous." *Id.* at *2. The Court pointed out that, "[a]s reprehensible as deliberate discrimination can be, '[c]ourts in this District have repeatedly found that racial discrimination alone does not meet the extreme and outrageous conduct standard necessary to state a claim for intentional infliction of emotional distress.'" *Id.* at *3 (citing *Hargraves v. City of Phila.*, 2007 WL 1276937, *3 (E.D. Pa. 2007) (collecting cases)). "Although racial discrimination is completely unacceptable in our society, . . . the plaintiff must prove that the conduct is outrageous in **character**, and not just in **motive**." *Id.* (citing *Forbes v. Rhode Island Brotherhood of Correctional Officers*, 923 F. Supp. 315, 330 (D. R.I. 1996) (emph. added)). "Discrimination cases in which accompanying [IIED] claims also are allowed to proceed involve much more egregious conduct than even that which is alleged here, most often involving assault or threats of assault." *Id.* (citing *e.g., DiSalvio v.*

*Lower Merion High Sch. Dist.*, 158 F. Supp.2d 553 (E.D. Pa. 2001) (denying motion to dismiss IIED claim when a teacher repeatedly sexually harassed a student, including by inappropriately touching her on multiple occasions); *Lane v. Cole*, 88 F. Supp.2d 402, 406 (E.D. Pa. 2000) (noting that while "[i]nvidious discrimination is not alone sufficient to support an [IIED] claim," "[t]he ejection of a tenant from her home with threats of violence in retaliation for her refusal to accede to racial discrimination is another matter")).

In this case, the facts, as set forth by plaintiff in his Amended Complaint, are insufficient to support his claim of IIED. The averments fail to satisfy the requisite outrageous conduct for such a claim, under Pennsylvania law. Furthermore, the Amended Complaint fails to allege physical injury, *see, e.g., Hart*, 647 A.2d at 554 (where plaintiffs "fail[ed] to allege physical injury," court found that "under the tort of [IIED] in Pennsylvania, [plaintiffs] have failed to state a claim"), and that defendants' conduct caused him to seek medical treatment, *see, e.g., Britt*, 632 A.2d at 562 (affirming the trial court's Order dismissing the IIED claim as alleging insufficient facts, the Superior Court stated "it is apparent that Appellant has failed to allege that Appellees' conduct caused him to seek medical treatment").

### 3. Conclusion

Defendants' motions to dismiss are granted in part and denied in part. The motions are granted with regard to plaintiff's claims of breach of contract (Count I), violation of Title IX (Count II), negligence (Count III), making public statements which place plaintiff in a false light (Count VI), and intentional infliction of emotional distress (Count VII). Defendants' motions to dismiss are otherwise denied. Accordingly, plaintiff may continue to pursue his claims of a

violation of the UTPCPL against defendant SJU (Count IV), defamation (Count V) against all defendants, and intentional interference with contractual relations (Count VIII) against defendant Jane Doe only.[9]

As mentioned, "if a [claim] is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Wiest*, 2014 WL 1490250, at *8 (quoting *Phillips*, 515 F.3d at 236). Therefore, plaintiff's claims of breach of contract, violation of Title IX, negligence, making public statements placing plaintiff in a false light, and intentional infliction of emotional distress (Counts I through III, and VI & VII) are dismissed without prejudice to the right of plaintiff to file a Second Amended Complaint to include any of these claims if he can within the confines of Rule 11(b), *see* Fed. R. Civ. P. 11(b), within twenty (20) days.[10] Otherwise, these claims are dismissed with prejudice.

An appropriate Order follows.

---

[9]Although defendant Jane Doe argues that plaintiff cannot bring a claim of intentional interference of contractual relations against her in light of SJU's finding that plaintiff violated institutional policy, as explained above, the fact that the contract indicates that SJU's determination that plaintiff's conduct violated institutional policy was "final" for purposes of the internal administrative determination under the contract does not mean that the Court is bound by SJU's findings for purposes of plaintiff's civil action claims in this Court. *See supra* note 6. Therefore, plaintiff may continue to pursue the intentional interference with contractual relations claim against defendant Doe as alleged in the Amended Complaint.

[10]The University Defendants request that defendant Kalin be dismissed in his individual capacity in that SJU "concedes an agency relationship with Kalin, and concedes that if Kalin were liable under any theory pleaded in the current Amended Complaint, [SJU] would be liable for Kalin's acts pursuant to principles of respondeat superior." *See* Univ. Defs.' Br. 29. However, defendants' request is declined as premature at this juncture, especially in light of the dismissal of the aforementioned claims without prejudice.